# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ENRIQUE CARLOS MONTOYA,

    Plaintiff,

v.                                                               Civil No. 99-0280 LH/WWD

WILFRED ROMERO, Warden,

    Respondent.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

    1. THIS MATTER comes before the Court upon Respondent's Motion to Dismiss, filed June 22, 1999 **[docket # 24]**. Petitioner is proceeding *in forma pauperis*, and has been appointed counsel. He has pending before this Court an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner was incarcerated for 179 days for criminal contempt of a stipulated permanent injunction requiring him to cease soliciting mortgage applications. Ans., Exs. A,B,C, & MM. He is no longer incarcerated.

    2. Respondent seeks dismissal based on lack of jurisdiction, failure to exhaust state remedies and procedural default. For the following reasons, I find that this Court does have jurisdiction to review Montoya's claims, although two of the three alleged grounds are defaulted and should be dismissed. I turn first to the threshold question of jurisdiction.

*Jurisdictional Issue*

    3. Because Petitioner was incarcerated when the petition was filed, the "in custody" requirement of 28 U.S.C. § 2254 is satisfied. See Carafas v. LaVallee, 391 U.S. 234, 238, 88 S.Ct.

1556, 1559-60 (1968). The issue disputed by the parties is whether Petitioner's release from jail moots his petition, since a petition for a writ of habeas corpus generally becomes moot when a prisoner is released from custody before the court has addressed the merits of the petition. See Lane v. Williams, 455 U.S. 624, 632, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982). However, the courts recognize an exception in cases where the petitioner will suffer collateral consequences if the challenged conviction or sentence is allowed to stand. See Carafas v. LaVallee, 391 U.S. 234, 237, 88 S.Ct. 1556, 1559, 20 L.Ed.2d 554 (1968); Oyler v. Allenbrand, 23 F.3d 292, 294 (10th Cir. 1994).

4. The United States Supreme Court has found that there is a "presumption" of collateral consequences from a criminal conviction, and where the mere "possibility" that a conviction will entail collateral consequences is enough to preserve a criminal case from ending "ignominiously in the limbo of mootness." Sibron v. New York, 392 U.S. 40, 55, 88 S.Ct. 1889, 1897-1900 (1968); see also Spencer v. Kemna, 523 U.S. 1, ___, 118 S.Ct. 978, 983 (1998) (citing Pollard v. United States, 352 U.S. 354, 358 & n.3 (1957) for "[t]he possibility of consequences collateral to the imposition of sentence [was] sufficiently substantial to justify our dealing with the merits").

5. Respondent contends that Montoya's challenge to his criminal contempt conviction carries with it no presumption of collateral consequences and that Petitioner must demonstrate collateral consequences. Petitioner claims that the possibility of an enhanced sentence for any subsequent federal crime he might commit within the next ten years under the United States Sentencing Guidelines holds a sufficiently adverse impact to qualify as a collateral consequence precluding mootness of his petition. Respondent argues that this is insufficient as demonstration of injury-in-fact because it is premised on Petitioner's violating the law in the future.

2

6. In this case, Petitioner challenges an underlying conviction of criminal contempt. Respondent offers no valid reason for not applying a presumption of collateral consequences other than the fact that Montoya is not challenging conviction for criminal contempt instead of a felony or misdemeanor conviction. Respondent's reliance on cases which require the petitioner to demonstrate collateral consequences is misplaced, because those cases involve challenges to length of sentence or revocation of parole, to which courts have not extended the presumption. See Lane v. Williams, 455 U.S. 624, 102 S.Ct. 1322 (1982) (refusing to extend presumption of collateral consequences to the revocation of parole); Spencer, 523 U.S. 1 (following Lane in declining to extend presumption to challenge to parole revocation and in finding that possibility of sentence enhancement based on parole violation was *not* enough to constitute a showing of collateral consequences); but cmp., D.S.A. v. Circuit Court Branch 1, 942 F.2d 1143, 1147, n.6 (7th Cir. 1991) (citing Port v. Heard, 764 F.2d 423, 427 (5th Cir.1985) ("Had the petitioners [in Lane ] challenged the underlying convictions and requested an opportunity to replead, ... the cases would not have been moot.").

7. Thus, I find that Petitioner's situation is entitled to a presumption that his conviction for criminal contempt has collateral consequences that exist after his release from jail.[1] See, e.g., In Re Murray Stewart, 571 F.2d 958, 966 (5th Cir. 1978) (citing cases which have allowed review of fully served contempt sentences); In re John Betts, 927 F.2d 983, 988 (7th Cir. 1991), rev'd on

---

[1] In St. Pierre v. United States, 319 U.S. 41, 63 S.Ct. 910 (1943), the United States Supreme Court held that payment of a fine rendered a contempt case moot. The Court's treatment of collateral consequences subsequently evolved from an inquiry into whether collateral consequences actually existed to a presumption that they existed. See Spencer v. Kemna, 523 U.S. 1, 118 S.Ct. 978, 983 (1998) (noting that the most generalized and hypothetical of consequences are accepted as sufficient to avoid mootness in challenges to conviction).

3

other grds., Betts v. U.S., 10 F.3d 1278 (7th Cir. 1993) (for attorney convicted of criminal contempt of court, habeas petition not moot even though the sentence for criminal contempt has been served, because conviction may have collateral consequences, such as action by the state attorney registration and disciplinary authority.)

8. Further, the possibility that this conviction for criminal contempt could result in an enhanced sentence for a future conviction is a collateral consequence. The notion that it is not because it is only triggered by later criminal conduct for which Petitioner is responsible has been halfheartedly embraced by courts.[2] See D.S.A., 942 F.2d at 1148-49 (and citing to numerous circuit court cases finding that the possibility that a conviction might be used in the future to enhance sentence was a collateral consequence); Evitts v. Lucey, 469 U.S. 387, 391 n. 4 (1985) (recognizing that the possible use of a criminal record in a future prosecution was a collateral consequence); Chacon v. Wood, 36 F.3d 1459, 1463 (9th Cir. 1964) (noting that because of federal sentencing guidelines based on prior criminal histories, federal "career criminal" statutes, and state repeat offender provisions, individuals convicted of crime remains forever subject to the prospect of harsher punishment for a subsequent offense as a result of federal and state laws that either already have been or may eventually be passed).

9. Respondent can overcome the presumption of collateral consequences if it can show that "there is no possibility that any collateral consequences will be imposed on the basis of the

---

[2] See Lane v. Williams, 455 U.S. 624, 633, n.13 (1982) (claimants are themselves able -- and required by law-- to avoid the possibility of prosecution and conviction); Spencer, 523 U.S. at _ _, 118 S.Ct.at 987 (it is assumed that respondents will conduct their activities within the law and so avoid prosecution and conviction) (citing O'Shea v. Littleton, 414 U.S. 488, 497, 94 S.Ct. 669, 677, 38 L.Ed.2d 674 (1974). Both Lane and Spencer involved challenges to parole revocation, not underlying convictions.

4

challenged conviction." Sibron v. New York, 392 U.S. 40, 55 (1968). Respondent can only assert that Petitioner's attempt to demonstrate collateral consequences "is clearly unacceptable" (Reply at 3) in light of Spencer and Lane, which, because they are cases involving challenges to parole revocation, are inapposite to Petitioner's case.

10. Accordingly, having reviewed the parties' briefs and relevant case law, I find that because collateral consequences are presumed in Petitioner's case, the case is not moot and this Court has jurisdiction to review Petitioner's claims.

*Exhaustion and Procedural Default*

11. However, not all of Petitioner's claims should be reviewed on the merits. Respondent is correct that two of the three claims are procedurally defaulted. Petitioner, who was proceeding *pro se* when he filed the petition, raises three grounds for relief, which are stated in incoherent and run-on phrases. Parts of the claims are interrelated. However, Claim One is clearly based on lack of due process because he allegedly did not have counsel.[3] This claim was presented on direct appeal and presented in a two-part issue to the state supreme court, and was subsequently denied. Ans., Exs. QQ, OO.[4] Parts of Claims Two and Three raise the same issues that were raised in Claim One. However, Claim Two raises allegations of denial of jury trial and Claim Three alludes

---

[3] The Answer contains exhibits which show that Montoya was represented for periods of time by various public defenders on a fee reimbursement basis. There seems to have been a breakdown of the attorney-client relationship in all of them, either because he did not meet the deadlines for fee payments, or because he refused to accept legal advice of counsel. See, e.g., Ans., Exs. E, M, Ex. A to Ex. BB, Ex. A (attached Motion to Withdraw).

[4] The first part argued the level of error that must be shown in a criminal contempt case when there was no judicial determination of indigency and the defendant had not had an opportunity to confer with the Public Defender on legal representation. The second was framed as a due process claim regarding an evaluation of indigency and a waiver of counsel in a criminal contempt case. Ex. QQ at 2.

5

to his sentence as "punitive," which I construe as a claim under the Eighth Amendment.

12. Petitioner's failure to file a state habeas petition has no negative consequences, since a failure to file a state habeas petition is not required in order to satisfy the exhaustion requirement. Once a prisoner has presented his claim to the highest state court on direct appeal, he need not seek collateral relief from the state. See Smith v. Atkins, 678 F.2d 883, 884 (10th Cir. 1982), cited in Osborn v. Shillinger, 861 F.2d 612, 616 (10th Cir. 1988); Rose v. Lundy, --- U.S. ----, 102 S.Ct. 1198, 1208, 71 L.Ed.2d 379 (1982), n.1 (Blackmun, J., concurring) (citing Brown v. Allen, 344 U.S. 443, 447, 73 S.Ct. 397, 402, 97 L.Ed. 469 (1953)).

13. However, Claims Two and Three were never presented to the New Mexico Supreme Court as New Mexico's highest court, and so they are unexhausted. In addition, because the time for applying for writ of certiorari has long since expired,[5] Claims Two and Three are also defaulted. See Smith v. Digmon, 434 U.S. 332, 98 S.Ct. 597, 54 L.Ed.2d 582 (1978) (once a federal claim has been submitted to a state's highest court, the exhaustion requirement is satisfied, even if the state court fails to address the federal claim); O'Sullivan v. Boerckel, 119 S.Ct. 1728, 1733 (1999) (issues presented to court of appeals on direct review but not presented to the state's highest court was improperly exhausted and therefore defaulted).[6] I note that Claim Three is defaulted also on

---

[5] New Mexico statute allows twenty days after final action by the court of appeals within which to apply to the supreme court for writ of certiorari. See N.M.S.A. 1978 § 34-5-14(A)(4).

[6] Even if Claim Two were not procedurally defaulted, I note that it would be dismissed with prejudice on its merits, since Montoya's sentence was less than 6 months and therefore denial of a jury trial for such cases does not violate any federal right. See Cheff v. Schnackenberg, 384 U.S. 373, 86 S.Ct. 1523, 16 L.Ed.2d 629 (1966) (misdemeanor, the penalty for which does not exceed imprisonment for a period of six months is a "petty offense," for which there is no constitutional right to trial by jury."), cited in Case v. State, 103 N.M. 501, 503, 709 P.2d 670, 672 (1985).

the basis that it was not raised on direct appeal. See Jackson v. Shanks, 143 F.3d 1313 (10th Cir. 1998) (as amended on rehearing) (New Mexico courts have "consistently and even handedly applied the rule waiving issues not raised on direct appeal for purposes of post-conviction relief").

14. In sum, I find that Montoya's federal petition may proceed in this Court, but limited only to those claims of ineffective assistance of counsel and indigency which have been completely exhausted, i.e., the two-part issue argued by counsel in his petition for writ of certiorari. Ans., Ex. QQ at 2.[7]

**Recommendation**

I recommend that Respondent's Motion to Dismiss **[docket # 24]** be GRANTED IN PART in that Claims Two and Three of the petition are dismissed with prejudice. Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE

---

[7] A separate order will be entered ordering the record proper and setting a briefing schedule.