IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ENRIQUE CARLOS MONTOYA,

    Plaintiff,

v.                                                    Civil No. 99-0280 LH/WWD

WILFRED ROMERO, Warden,

    Respondent.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

    1.  THIS MATTER comes before the Court upon Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Mr. Montoya ("Montoya") is currently incarcerated, is proceeding *in forma pauperis*, and is currently represented by counsel, although he was proceeding *pro se* at the time he filed his petition. Petitioner was incarcerated for 179 days for criminal contempt of a stipulated permanent injunction requiring him to cease soliciting mortgage applications. Ans., Exs. A,B,C, & MM. He is no longer incarcerated.[1]

**Background**

    2.  Several claims in the petition have been dismissed by the Court on the basis of exhaustion and procedural default. The Court also denied Respondent's motion to dismiss, in which Respondent contended that Montoya was not in custody for jurisdictional purposes because his challenge to his criminal contempt conviction carries with it no presumption of collateral consequences. See docket ## 30, 33. What remains of the petition is the allegation that

---

[1] References to "RP" are to the record proper in this case. "T" (Tape) citations to the state record proper are to a Sony Model BM-88, with approximately 91 counters per tape side.

Petitioner's conviction for criminal contempt of court was secured in violation of his right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution.

3. Respondent maintains that Montoya's constitutional rights were not violated because he waived his right to counsel by his conduct.

4. On April 23, 1997, on a complaint filed by the Attorney General on September 3, 1996, Montoya entered into a stipulated permanent injunction enjoining him from engaging in a variety of unlawful practices in connection with his business as a mortgage loan broker. On June 24, 1997, the Attorney General filed a motion for an order to show cause why Montoya should not be held in contempt for failing to comply with certain provisions in the stipulated injunction.

5. Just prior to the hearing on this motion, held on July 10, 1997,[2] the court allowed Montoya's counsel at the time, Mr. Maldegen, to withdraw. The trial court denied Montoya's motion to reconsider the decision. Ex. TT at 1. Petitioner was without counsel at that hearing. Judge Art Encinias, the judge assigned to the case, informed Montoya that he would be provided an attorney if he was indigent, but there was no further discussion on the matter. The hearing was then continued in order to allow Montoya to obtain materials which were in the possession of his counsel, although the Court allowing a State witness to testify in the interest of expediency.

6. The contempt hearing recommenced on July 22, 1997 and continued through July 23rd. Montoya again appeared without counsel. Petitioner was found to be guilty of the crime of

---

[2] This hearing concerned the state's allegation that Montoya had set up a sham company in an attempt to circumvent the prohibitions contained in the stipulation injunction. The state had also filed a second motion for a show cause hearing concerning the failure to timely submit certain loan documents to the Office of the Attorney General. RP at 124-27. Petitioner was held to be in civil contempt of court at that hearing which was held on July 8, 1997. RP at 198-99. This first hearing, at which Petitioner was represented by counsel, is not at issue here.

contempt.

7. On appeal of this decision, he was represented by retained counsel. The state court of appeals found that the trial court had used the wrong burden of proof in finding Montoya in contempt, but also found that Montoya's right to counsel had not been violated. <u>Ans., Ex. TT</u> Montoya again appeared without counsel at the hearing on remand, and on December 9, 1998, the court held that there was proof beyond a reasonable doubt that Petitioner "willfully, deliberately and intentionally" violated the stipulated permanent injunction. <u>Ex. C</u>.

8. There is no dispute that Petitioner had the right to be represented by counsel at his July 1997 Show Cause hearing. <u>See</u> <u>Argersinger v. Hamlin</u>, 407 U.S. 25 (1972); <u>United States v. Collins</u>, 920 F.2d 619, 624 (10th Cir.1990) (right to counsel exists where defendant is deprived of his liberty by incarceration). It is also clear (and undisputed) that Montoya never expressly waived his right to counsel. Instead, the parties argue over whether Petitioner waived the right impliedly by his conduct and if so, whether that waiver was valid.

## Discussion

9. A defendant may waive his Sixth Amendment right to counsel and conduct his own defense. <u>Faretta v. California</u>, 422 U.S. 806, 834 (1975). Waiver can be implied through conduct, particularly "when that conduct consists of tactics designed to delay the proceedings." <u>U.S. v. Hughes</u>, 191 F.3d 1317, 1323 (10th Cir. 1999). However, a waiver of the right to counsel will only be valid if it is an "intentional relinquishment or abandonment of a known right or privilege." <u>U.S. v. Taylor</u>, 113 F.3d 1136, 1140 (10th Cir. 1997) (finding defendant's waiver of right to counsel voluntary, but not knowing and intelligent because entire circumstances of case showed defendant's pro se experience was limited and that he was not aware of the "risks and

3

perils" of self-representation)(citations omitted).  Thus, the court must ensure that the waiver was voluntary, knowing, and intelligent.  Id.

10.   At the same time, however, the right to counsel must be balanced against the need for efficient and effective administration of criminal justice.  See U.S. v. Gipson, 693 F.2d 109 (10th Cir. 1982), cert. denied, 449 U.S. 1012 (1980), overruled on other grds.by U.S. v. Allen, 895 F.2d 1577 (10th Cir. 1990) (citing U.S. v. Weninger, 624 F.2d 63 (10th Cir.).

11.   Ideally, this should be done by formal inquiry by the trial judge in order to demonstrate that the defendant is "aware of the nature of the charges, the range of allowable punishments and possible defenses, and is fully informed of the risks of proceeding pro se." United States v. Willie, 941 F.2d 1384, 1388 (10th Cir.1991) (citing Faretta, 422 U.S. at 835, 95 S.Ct. 2525); see also United States v. Padilla, 819 F.2d 952, 959 (10th Cir.1987).

12.   Petitioner argues that in addition to there being insufficient evidence that he waived his right to counsel, an inquiry was never conducted in order to ensure that any waiver would have been knowing and intelligent.  However, after a review of the record proper, including the tapes of the underlying proceedings, and the parties' other pleadings and submissions, I find that there is no merit to either position.

13.   Petitioner fails to acknowledge that there are situations where a waiver may be valid absent a formal inquiry by the court, "where the surrounding facts and circumstances, including the defendant's background and conduct," demonstrate that he "actually understood his right to counsel and the difficulties of pro se representation and knowingly and intelligently waived his right to counsel." Hughes at 1323 (citing U.S. v. Willie, 941 F.2d 1384, 1389 (10th Cir.1991)). This case presents such a situation.

14.     Under the Antiterrorism and Effective Death Penalty Act of 1996, factual findings from state court proceedings are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).[3]  A federal court may grant habeas relief if, and only if, the "decision" resulting from that adjudication was "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or involved an "unreasonable application of" law, or an "unreasonable determination of the facts in light of the evidence" presented at the state level.  § 2254(d).

15.     The state court of appeals in this case considered what had transpired at the July 10, 1997 and July 22, 1997 criminal contempt hearings where Montoya had proceeded without counsel.  Ex. TT at 1-2.  Although the state court held that Montoya's right to counsel was not violated, it also found that the trial court should have advised Montoya of the right to confer with the public defender.  Relief was nevertheless denied because the error was considered harmless.  Montoya had not shown he was indigent and therefore entitled to counsel, and the record showed no attempt to obtain an attorney through the public defender's office.  At 3.

16.     While it is not clear if the state court was using a "harmless error" approach to resolve the issue, the findings follow a course which is arguably inconsistent with federal law, because federal law does not apply a harmless error analysis to determine whether a defendant's waiver of right to counsel was knowing and voluntary.  See Allen, 895 F.2d at 1578-79 (basing holding on Penson v. Ohio, 488 U.S. 75 (1988)).  However, this Court must defer to those factual

---

[3] Pub.L.No. 104-132, tit.I, sec. 104 (to be codified at 28 U.S.C. §§ 2254(d),(e) (April 24, 1996)).  See Lindh v. Murphy, __ U.S. __, 117 S.Ct. 2059, 2068 (1997) (new AEDPA provisions generally apply only to cases filed after the Act became effective).

findings of the state court which are not "unreasonable determinations of the facts in light of the evidence" presented at the state level.  See § 2254(d); Hooks v. Ward, 184 F.3d 1206, 1223 (10th Cir. 1999).  Further, under a *de novo* review of the record, my findings lead to the same conclusion as that of the state court.

17. Respondent's description of Petitioner's conduct is accurate.  Montoya repeatedly asserted his right to counsel, then failed to do what is necessary to obtain counsel.  The record, which includes documents from proceedings subsequent to the contempt hearing at issue, bears out this characterization.  It is rife with examples of various attorneys -- at least five -- withdrawing from representation because of Montoya's unreasonable conduct, either in failing to comply with agreed terms of compensation or by abusive behavior.

18. At the hearing on July 10, 1997, Judge Encinias advised Montoya of his right to counsel if he could not afford an attorney, to which Montoya responded that he "would appreciate that if I can qualify."  (7/10/97 T3 at 38-39).[4]  The trial court was concerned about Montoya being "railroaded" since his lawyer had just withdrawn, acknowledging that there would probably be jail time if contempt were found.  (7/10/97 T3, 40-42).

19. The court was careful thereafter not to go too "close to the line" during the hearing and allowed the state to examine one hardship witness in order to just "capture the evidence."  (7/10/97 T3, 46-47).  It is obvious from listening to the statements made by both the judge and

---

[4] The trial court informed Montoya at the outset that his retained lawyer had withdrawn because he was not "getting paid," but a few minutes later stated counsel's reason for withdrawing as "conflict" (7/1/97 T3, 28; 34).  Montoya argued that he had recently complied with the financial agreement between himself and counsel [see Pet. Ex. A]. The trial court emphasized that any dispute over pay was unrelated to the matter before the court at the time and that the court could not "make him be your lawyer."  (T3 at 29).

Montoya, that the judge was familiar with seeing Montoya appear before him as a *pro se* defendant and that Montoya was familiar not only with the legal process but also with the technicalities of self-representation. (7/10/97 T3, 43-45).

20. From an examination of the "entire circumstances" of this case, it is abundantly clear that this is a case where formal inquiry does not invalidate a defendant's waiver of the right to counsel. See Taylor, 113 F.3d at 1140. "Entire circumstances" include not only the record, but also other factors such as a defendant's age and education, previous experience with criminal trials, and a defendant's background, experience, and conduct. Id.

21. Montoya was notified at the end of the July 10th hearing that the proceeding would be reset for July 22nd. Despite the fact that the state court raised the issue of appointed counsel at the July 10th hearing, there is no indication that Montoya during this time ever requested either appointment of counsel or a determination of whether he was qualified for appointed counsel, as the state court of appeals pointed out. Ex. TT at 3. Nor did he object to proceeding without counsel at the July 22nd continuance.

22. Ordinarily, silence on this issue by itself would not constitute a waiver of the right to counsel. However, in light Montoya's habitual attempts to manipulate the legal system, I find Montoya's silence and inaction to be part of the surrounding circumstances in this case which demonstrate waiver of that right. A defendant cannot benefit by seeking through his own deliberate and intentional actions "to insert built-in error" into legal proceedings -- there must be "some limit to the defendant's ability to manipulate the judicial system." U.S. v. Willie, 941 F.2d 1384, 1391 (10th Cir. 1991), cert denied, 502 U.S. 1106 (1992).

23. Petitioner's pattern of approach-and-avoidance spanned several contempt hearings

(continuance of the July 10th hearing, remand hearing in December 1998, and at least one other criminal contempt hearing after Montoya continued to violate the injunction after his release pending appeal [see Exs. WW & ZZ; Resp. (attachment) "Decision of the Court"]), as well as the trial on the merits in December 1998 and January 1998, at which he again appeared *pro se*.

24. In December 1998, Montoya requested a continuance of the hearing on remand from the state court of appeals in order to determine indigent status for appointment of counsel. Ans., Ex. JJ. Although he did not qualify,[5] Montoya was offered representation by the public defender for a fee of $2,500.00 to be paid in installments. According to one of the affidavits submitted by Respondent, Montoya told an administrator at the state Public Defender Department that he thought this amount was excessive for one hearing and that he could hire a private attorney for less. Ex. UU, Aff. A. Montoya appeared *pro se* for the remand hearing.

25. When Montoya apparently decided to enter into a contract with the Public Defender Department wherein he was obligated to reimburse the department in exchange for legal fees, he failed to make any payments on the contract. According to another affidavit, Montoya made written threats to defense counsel appointed under this contract to harm her "if a certain legal outcome is not achieved." Ans., Ex. E at 2. The affidavit describes repeated conduct on Petitioner's part which is demanding, unreasonable, abusive and destructive to any semblance of a lawyer-client relationship.

26. Judge Encinias noted these events in his decision issued on a October 1999 contempt hearing on an Order to Show Cause (at which Montoya represented himself):

---

[5] Montoya was noted to be "indigent" by the trial court only after he was sent to jail on December 9, 1998, because he would not be generating income in jail. Ex. DD at 4.

      In preparation for the second Contempt hearing, the court encouraged Montoya to secure an attorney. But Montoya delayed and delayed so that when the hearing date came up, Montoya showed up without a lawyer, again claiming his rights were being violated. [The trial court offered to appoint Montoya a public defender and postpone the hearing, since Montoya claimed to be impoverished].

      But Montoya did not comply with the agreement [to pay the $2,500.00 fee]. And, by reason of his unreasonable conduct, forced the appointed attorney to withdraw. Montoya then sought appointment of yet another attorney. The court then directed Montoya to again apply to the Public Defender but Montoya refused and failed to apply, this time claiming that the Public Defenders' procedures were somehow unconstitutional. Resp. (attachment at 6).

27. In the same decision, the trial court summed up its experience with Montoya:

[when Montoya again appeared without a lawyer for the October 1999 hearing], Montoya had, by his conduct, waived his right to counsel and had elected to proceed pro se. This determination was informed by nearly three years of experience with Montoya in which he consistently played fast and loose with legal and constitutional concepts designed to protect an accused, twisting them in a transparent attempt to confuse or delay court proceedings. Resp. (attachment) at 6.

28. Similarly, the trial judge took note of Montoya's actions prior to his trial. Petitioner asked for and received the court's latitude in postponing the trial for lengthy periods and in getting furloughs from jail on his contempt sentence in order to gather material in preparation of his defense. See Ex. U. During one of these "furloughs," Montoya failed to appear for the hearing and did not return to jail at the close of the furlough, resulting in criminal escape charges. See Ex. K at 12. Montoya waited until "the last possible moment -- the first day of trial in 1999" to serve subpoenas for witnesses. Id.[6] The trial court described Montoya's actions as a "deception" where Petitioner's alleged disadvantage in presenting a defense were actually brought about by his own actions:

In my view, the Defendant has had ample opportunity for preparation and

---

[6] For the July 23, 1997 criminal contempt hearing, Montoya also served subpoenas on witnesses less than a week before trial. See, e.g., 7/23/97 T6, 22-28.

9

presentation of defense, but he has severely burdened and abused the due process of law to which he is entitled. The legal system has bent over to accommodate the Defendant and he has taken that opportunity to kick it firmly in the behind. <u>Ex. K at 12</u>.

29. Petitioner cannot use his right to counsel to play a "cat and mouse game" with the court, or "by ruse or stratagem fraudulently seek to have the trial judge placed in a position where, in moving along the business of the court, the judge appears to be arbitrarily depriving the defendant of counsel." <u>Allen</u>, 895 F.2d at 1578 (quoting <u>U.S. v. McMann</u>, 386 F.2d 611, 618-19 (2d Cir.1967)).

30. I find that Petitioner's own actions undermined his professed right to counsel and that he used the absence of counsel that he manipulated as an excuse to claim a violation of a constitutional right. <u>Cmp.</u>, <u>Willie</u>, 941 F.2d at 1390. Despite Petitioner's allegation of a constitutional violation, the record demonstrates that Petitioner's conduct served either to create delays or to set up backdrops for this allegation.

31. Petitioner's attempts to distinguish cases relied on by Respondent are fruitless. The <u>Willie</u> defendant asserted his right to self-representation and expressed his dissatisfaction with appointed counsel on the record, unlike Montoya who makes much ado of trying to obtain counsel and keeps his dissatisfaction behind-the-scenes. The court in <u>Willie</u> found that defendant's formally expressed dissatisfaction with counsel obviated the need for formal inquiry by the court in order to render the waiver valid.

32. The <u>Allen</u> defendant proceeded to represent himself after he expressed a desire for and then rejected appointed counsel. Although the trial court in <u>Allen</u> was not obligated to replace counsel, the court's failure to conduct a formal inquiry to determine whether the waiver

was knowing and intelligent rendered the purported waiver invalid.

33.   Neither case contains facts sufficiently analogous to those of the present case. Petitioner's repeated self-sabotaged attempts to obtain representation belie any alleged deprivation of a constitutional right.  Accordingly, I find that  (1) Petitioner voluntary waived his right to counsel by his conduct and (2) this waiver is valid in that it was knowing and intelligent based on the surrounding facts and circumstances.  Petitioner was fully aware of the "magnitude of the undertaking and inherent hazards of self-representation . . . ." Taylor, 113 F.3d at 1141- 42 (citing Padilla, 819 F.2d at 956).

## Recommendation

I recommend that Petitioner's application for Writ of Habeas Corpus be denied and that this cause be dismissed with prejudice in its entirety.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE